**2015 BNH 013 Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                  Bk. No. 14-10131-BAH
                                                                                         Chapter 13

Noah S. Weiner,
          Debtor

| | |
|---|---|
| *Joel Jay Rogge* | *David E. LeFevre* |
| *Law Office of Joel Jay Rogge* | *Tarbell & Brodich, P.A.* |
| *Marblehead, MA* | *Concord, NH* |
| *Attorney for the Debtor* | *Attorney for Bank of New Hampshire* |
| *Attorney for Ekaterina Ponomareva* | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Before the Court is an objection to the debtor's homestead exemption (the "Objection").[1] Creditors Bank of New Hampshire (the "Bank") and Marilyn Richards ("Richards")[2] both allege that the debtor, Noah Weiner (the "Debtor"), and his non-debtor spouse, Ekaterina Ponomareva ("Ponomareva"), abandoned their homestead interest in certain property in Meredith, New Hampshire and moved to Costa Rica, pre-petition. The Debtor and Ponomareva both deny abandoning their homestead interest. After a period of discovery, the Court held an evidentiary hearing on the Objection, at which a number of witnesses testified. After the hearing, the Court took the matter under advisement.

---

[1] The Bank and Richards each filed separate objections to the homestead exemption (Doc. Nos. 151 & 168). Both objections raise identical issues, so the Court refers to them collectively as a singular objection.
[2] Richards is pro se.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).  In the event a reviewing court determines that this Court lacked jurisdiction to enter a final order, that court may treat the following opinion as proposed findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c).

## II.  FACTUAL BACKGROUND

The following factual background is drawn from the evidentiary hearing's record.  Where necessary, the Court has taken judicial notice of the docket.  Before filing his bankruptcy petition, the Debtor ran a furniture business, which experienced financial difficulty sometime in the late spring or early summer of 2012 and closed shortly thereafter.  At this time, the Debtor was living in the property located at 9 Waukewan Avenue in Meredith, New Hampshire (the "Property") with Ponomareva and their two children.  The Property is a two-floor, two-family home with an extensive basement and finished attic space.  The Debtor was renting out the second floor unit and living on the first floor.  Ponomareva is not an owner of the Property; it is titled solely in the Debtor's name.

In July of 2012, the Debtor and Ponomareva took what they described as a family vacation to Costa Rica.  Rod Ladman, a former business associate of the Debtor, testified that the Debtor told him the purpose of this trip was to pursue business opportunities.  The record is unclear as to when the Debtor and Ponomareva returned to the United States from their trip.  Upon their return, however, the Debtor's financial situation had not improved, and Ponomareva decided that it would

2

be best for her and the children to leave New Hampshire and stay with her parents in Russia. She departed for Russia in December 2012, while the Debtor remained behind.

During the winter and spring of 2013, the Debtor worked with his creditors, liquidating certain assets in an effort to satisfy some of his debts. One of the assets the Debtor sold was a motorcycle. The buyer was Mike Cummins, who worked with the Debtor's tenant. Cummins testified that when he went to pick up the motorcycle and asked why the Debtor was selling it, the Debtor informed him that he was moving to Costa Rica. Cummins also testified that when he went to the Property, one of the rooms on the first floor had an unidentified woman living in it, who appeared to be a tenant. Ladman, the Debtor's business associate, also testified that the Debtor told him he had decided to move to Costa Rica, after the vacation the previous summer.

In April 2013, the Debtor traveled from the United States to Russia to bring back Ponomareva and the children. See Ex. 105.[3] The Debtor returned to the United States on May 9, and Ponomareva returned on June 20. Shortly thereafter, both departed for Costa Rica, arriving on June 26, 2013. After the Debtor moved to Costa Rica, his tenants sent their rent payments directly to him. The tenants also took care of paying bills, such as utility bills, which the Debtor could not easily take care of from abroad. The Debtor and Ponomareva did not return to the United States until November 26, 2013, when they came back to visit family. After the visit, they departed for Costa Rica, arriving there on December 9, 2013.

The Debtor filed his bankruptcy petition on January 27, 2014 (the "Petition Date"), while he was in Costa Rica. He opted to claim New Hampshire state exemptions pursuant to 11 U.S.C.

---

[3] The Debtor's and Ponomareva's passports were introduced as evidence. Exhibits 105 and 106 are summaries of the entry and exit dates contained in each of the passports. Both the Debtor and Ponomareva testified that Exhibits 105 and 106 were accurate summaries of their travels. When the Court refers to specific travel dates, the reference is based on Exhibits 105 and 106.

3

§ 522(b).[4]  See Doc. No. 20, Schedule C.  He filed his first chapter 13 plan on February 25, 2014. The plan stated in paragraph 13 that the Debtor would sell the Property, retaining his homestead exemption amount of $100,000, and then distribute the remaining proceeds to creditors holding claims secured by the Property.  At this point, the Bank and Richards filed objections to the Debtor's homestead exemption, claiming that he had abandoned it by moving to Costa Rica.  See Doc. Nos. 34 and 57.

The Debtor returned, without Ponomareva, for the section 341 meeting of creditors, which was held on March 3, 2014.  He then traveled to Costa Rica on March 13, 2014.  Both the Debtor and Ponomareva returned to the United States in April to attend a hearing on the Objection on April 29, 2014.  Both then departed to Costa Rica.

Beginning in January 2015, the Debtor filed a series of amended chapter 13 plans.  The first of these was the amended plan dated January 19, 2015 (Doc. No. 149).  For the first time, this plan raised the issue of Ponomareva's homestead exemption, asserting that she was entitled to a separate $100,000 exemption.  A few days later, on January 21, 2015 the plan was again amended, this time to state that the Property would be sold "if necessary" (Doc. No. 159).  These amended plans engendered another round of exemption objections from the Bank and Richards. See Doc. Nos. 151 and 168.  In this second round of objections, Richards and the Bank made it clear that they objected to Ponomareva's homestead exemption as well as the Debtor's.  The Debtor amended the chapter 13 plan twice more, once on March 1, 2015 (Doc. No. 192) and finally on March 12, 2015 (Doc. No. 199).  Each of these plans changed the language with respect

---

[4] All further references to §, section, Code, or Bankruptcy Code are references to title 11 of the United States Code, unless otherwise indicated.

4

to the Property to make it clear that it would be sold, removing the "if necessary" qualifier. The Court confirmed the latter of these plans on March 26, 2015.

The issue of Ponomareva's homestead exemption raised jurisdictional questions, including whether Ponomareva was a party to the Objection and to the Debtor's chapter 13 case. The Court resolved these issues in an order dated March 26, 2015 (Doc. No. 207), in which the Court concluded that it had jurisdiction over the issue of Ponomareva's entitlement to a homestead exemption and that she was a necessary party to the dispute.[5]

The Court held the evidentiary hearing on the Objection on July 30, 2015. At the hearing, the Debtor explained that he had traveled to Costa Rica to temporarily escape a toxic situation, where his business was failing and his property was being seized. He asserted that he had not abandoned his homestead interest in the Property, that he still considered it his home, and that he intended to return eventually. He further explained that he did not have a permanent job in Costa Rica and was house-sitting for a friend while there. To support the contention that he had not abandoned his homestead interest, the Debtor pointed out that he still had many personal possessions at the Property and that the first floor, attic, and basement remained unoccupied, awaiting the return of him and Ponomareva. The Debtor also raised the issue of a letter he had sent to the Belknap County Superior Court in September 2013. In this letter, he had stated that, "I would like to activate my homestead protection act rights for my wife and I so we do not lose our home." Ex. 109. The letter also referenced the Debtor's desire to "move back into [his] home." Id.

---

[5] The details of the Court's reasoning are not relevant to the matter at hand.

The Debtor's second-floor tenant, Justin Thomas, also testified on the Debtor's behalf. His testimony was brief, and in the relevant part consisted of Thomas stating that he had no reason to believe that the Debtor and Ponomareva had moved out of the Property. Both the Debtor and Ponomareva testified that they had come to the evidentiary hearing from Costa Rica, where they were still living. Ponomareva made it clear that she and her family had been living in Costa Rica continuously since moving there in 2013, and that while there she had given birth to another child.

The Debtor also raised the issue of his Costa Rica visa as evidence that he and Ponomareva intended to return to the Property. The passport records show that roughly every 90 days they would depart Costa Rica, enter Panama, and then return to Costa Rica on the same day. The Debtor explained that this was necessary because the type of visa he and his wife had only allowed them to stay in Costa Rica for 90 days at a time. He further explained that they could get around this requirement by leaving Costa Rica for five hours, going to Panama, and then returning. This brief departure would reset the 90-day period. The Debtor concluded that this tactic would not work forever and that he would have to return home to the United States, and the Property, eventually.

At the conclusion of the evidentiary hearing, the Court invited the parties to submit closing memoranda and then took the Objection under advisement.

## III.  DISCUSSION

The only question before the Court is whether the Debtor and Ponomareva are each entitled to a homestead exemption in the Property. As the Debtor claimed state exemptions in his bankruptcy schedules, this is a question of New Hampshire law. In New Hampshire, "[e]very

6

person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1.  The owner of the homestead and the owner's spouse "are entitled to occupy the homestead right during the owner's lifetime." RSA 480:3-a.  The effect of RSA 480:3-a is to vest "a homestead right in both spouses, even when only one spouse legally owns the homestead." Maroun v. Deutsche Bank Nat'l Trust Co., 167 N.H. 220, 226 (2014).  Bankruptcy Rule 4003(c), governing objections to a debtor's exemptions, places the burden of proof on the objecting party to establish that the claimed exemption is improper.  Fed. R. Bankr. P. 4003(c). Under New Hampshire law, "the homestead claimed by the [d]ebtor[] was created by the New Hampshire legislature as a matter of public policy and is to be construed liberally." In re Myers, 323 B.R. 11, 13 (Bankr. D.N.H. 2005) (citing Currier v. Woodward, 62 N.H. 63, 66 (1882)).

The New Hampshire Supreme Court has consistently defined the homestead exemption: "'Homestead' means home place, or place of the home." Austin v. Stanley, 46 N.H. 51, 52 (1865). "The statute was specifically intended to secure to debtors and their families, the shelter of the homestead roof; not to exempt mere investments in real estate, or the rents and profits derived therefrom." Id.  In defining the homestead right, the Supreme Court has focused on the concept of occupancy:

> Occupancy is essential to the existence of the homestead right, and for the purpose of its creation or inception the occupancy must be actual; but when the premises have become invested with the homestead character, and a homestead has been once acquired, a constructive occupancy may be sufficient to retain it, and it will not be lost by a temporary absence with no intention of abandonment.

Currier, 62 N.H. at 65; see In re Weza, 248 B.R. 470, 473 (Bankr. D.N.H. 2000)("One of the prerequisites for asserting the New Hampshire homestead exemption is that the debtor reside at the property.")

7

As a preliminary matter, the Court finds that the Debtor and Ponomareva did at one time occupy the Property as their home and so it became "invested with the homestead character." Currier, 62 N.H. at 65. The evidence was unequivocal on this point, as both the Debtor, Ponomareva, their neighbor, and the Debtor's tenant, Thomas, all testified to this effect. There was no countervailing evidence. The sole question before the Court, then, is whether the Bank and Richards presented sufficient evidence that the Debtor and Ponomareva were not temporarily absent from the Property, and intended to abandon the homestead interest. See In re Dubravsky, 374 B.R. 467, 468 (Bankr. D.N.H. 2007) ("[O]nce homestead is established, temporary absence, with the intent to return or incident to a pending divorce, does not result in a loss of homestead.); In re Chase, 2003 BNH 032, at 5 ("Under New Hampshire law the failure to occupy the [p]roperty while residing somewhere else as a home results in a loss of the homestead right, unless the absence is 'temporary.' The word 'temporary' is an adjective describing something that continues for a limited time, usually short and transitory in nature.")(citing Black's Law Dictionary)(7th ed. 1999).

In order to properly claim the homestead exemption, the claimed property must satisfy the relevant state law requirements as of the date of the bankruptcy petition. Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 324 (1st Cir. 2008) ("It is a basic principle of bankruptcy law that exemptions are determined when a petition is filed."). In order for the Bank and Richards to prevail on their Objection, the Court must find that on the Petition Date, the Debtor and Ponomareva had already abandoned their homestead interest, and did not intend to return and live at the Property. The Court finds that both pre-petition and post-petition evidence is relevant to answering this legal question.

There is no set legal standard under New Hampshire law for determining when a property loses its homestead character after the owner has moved elsewhere. The New Hampshire Supreme Court has established that a person can have only one homestead at a time. See Gerrish v. Hill, 66 N.H. 171 (1890) ("The law exempts but one homestead at the same time.") (citing Horn v. Tufts, 39 N.H. 478, 483 (1859) ("[A] man can have but one home at the same time.")). In Gerrish v. Hill, the court addressed a situation in which a family had moved from a farm in one town (Enfield) to a different farm in another town (Franklin), and was attempting to assert a homestead exemption in the Enfield farm. The court held that the debtors could not exempt the unoccupied Enfield farm because at the time the creditor in question had commenced to execute upon it, the debtors had already conveyed it to someone else; the debtors' occupancy of the Enfield property at the time of the execution was immaterial. Gerrish, 39 N.H. at 171.

The debtors' conveyance of the property in Gerrish distinguishes it from the present case, but Gerrish is nonetheless relevant. The court went on to observe that the debtors were "actually living upon and had a homestead in their Franklin farm when they made the demand for a homestead" in the Enfield farm they previously owned. The Gerrish court's final observation is relevant to this case. When it was clear that the debtors had moved elsewhere, they could no longer claim a homestead exemption in the property they had moved from, notwithstanding the prior conveyance. Here, the situation is not as clear cut as that in Gerrish because the Debtor still owns the Property. The Court finds that the same logic applies, however, because the Debtor and Ponomareva had made their home elsewhere at the time they first asserted an exemption right in the Property on the Petition Date.

9

The totality of the evidence shows that the Debtor planned to move to Costa Rica, told at least two people about this plan, and then did actually move there, accompanied by Ponomareva. Two witnesses, Ladman and Cummins, testified that the Debtor told them he was moving to Costa Rica. The Court found their testimony to be credible and there is nothing in the record that tends to discredit it. The other evidence is consistent with what the Debtor told these witnesses. The Debtor and Ponomareva have been living in Costa Rica—not the Property—since June 2013. By their own testimony, the only times they returned during this period were for visits or to participate in discrete parts of the bankruptcy process, such as the 341 meeting and the evidentiary hearing.

The Debtor points to the New Hampshire Supreme Court's ruling in Meader v. Place, 43 N.H. 307 (1861), to demonstrate that his absence from the Property is not enough for the Court to find that he abandoned his homestead interest in the Property. In Meader, a husband and wife had separated. After the separation, the husband bought a new farm, lived there for a time, and then decided to travel to Minnesota on business. He leased the farm when he left New Hampshire. After being in Minnesota for about a year, the husband died and the wife asserted a homestead right in the leased farm in New Hampshire. The court ruled that the wife could exempt the farm in New Hampshire because the husband had not clearly abandoned it. The court stated that at the time of the husband's death "it [was] by no means certain that he had adopted the State of Minnesota as his permanent home." Meader thus stands, in part, for the proposition that a lengthy absence may still be a "temporary" absence.

The Court finds that Meader v. Place is distinguishable from the case at hand. In Meader, the husband and wife were living separately, and the husband traveled wholly for business purposes to Minnesota. The facts in that case were sufficient for the court to find that the

10

husband's absence from his homestead was temporary. Here, the evidence shows that both the Debtor and Ponomareva have moved indefinitely to Costa Rica. The Debtor announced he was moving, did in fact move, and Ponomareva accompanied him. While living there, they had another child, who has never lived in the United States. These factors all coincide to show that the Debtor and Ponomareva had abandoned the Property on the Petition Date. Indeed, neither the Debtor nor Ponomareva were able to present convincing evidence that would call into question the evidence presented by the Bank and Richards.

Both the Debtor and Ponomareva testified at the evidentiary hearing. The Debtor testified that he always intended to return to New Hampshire and that he still viewed the Property as his home. For a number of reasons the Court finds this testimony to lack credibility. The Debtor explained that he and his family could not remain in Costa Rica indefinitely because of their 90-day visa problem. This argument lacks persuasive force because more than two years later, the Debtor and Ponomareva are stilling living in Costa Rica under sequentially extended visas.

Next, the Debtor testified that he still had much of his personal property in the Property, demonstrating that he had not permanently moved out. He did not provide any detail about the personal property. Again, this testimony is not credible because the Debtor is still living in Costa Rica—he and his family have been without these possessions for over two years. Without additional evidence about the types of personal property that remains in New Hampshire, the Court does not find this point to be material.

When asked about what he was doing for work in Costa Rica, the Debtor testified that he had been house-sitting for a family friend and doing simple home maintenance tasks. Again, when testifying about these activities, the Debtor spoke as if he had only been in Costa Rica for a

11

few months and the job was temporary. It has, however, been years since he moved there, and the Court does not find it credible that he could have been temporarily house-sitting for that amount of time. Based on this record, the Court is uncertain about what the Debtor and his family have been doing in Costa Rica. The Court infers that either the house-sitting job is more permanent than the Debtor implied, or that he has obtained some type of other work. Neither of these inferences would be consistent with the Debtor's testimony that he intends to return to New Hampshire, which further detracts from its credibility.

The Debtor also pointed to the letter he had written a few months before filing his bankruptcy petition as evidence of his intent to return to the Property. While taken at face value and in isolation from the other evidence, the letter would tend to support the Debtor's position. But it is not credible evidence because the statements in the letter are no more consistent with the Debtor's actions than his testimony at trial. There is no objective evidence that the Debtor or Ponomareva took steps to return to the Property.

The Debtor was evasive when the Bank's counsel questioned him about any intentions he may have had around the time of the bankruptcy petition with regard to selling the Property. At one point, the Debtor stated that he did not want to answer a question about whether he would have sold the property on the Petition Date if he had received an offer for it. From this refusal to answer, the Court infers that the answer would have been damaging to the Debtor's narrative. Indeed, the Debtor was never able to explain how his intention to return to the Property jibed with the content of his then proposed and now confirmed chapter 13 plan, which involves the sale of the Property. Based on the Debtor's responses to this series of questions, the Court finds that the

Debtor displayed an awareness that his story was internally inconsistent; he did not seem to believe what he was saying.

The Debtor's tenant's testimony was no more credible. He testified that he had no reason to believe the Debtor's family had moved out. He did not provide any elaboration beyond stating that conclusion on direct examination. On cross-examination, he simply denied that the fact that the Debtor and Ponomareva are living in Costa Rica could reasonably lead to the conclusion that they had moved out, again without elaboration. Without more explanation, the Court finds these positions to be logically inconsistent. Additionally, the Bank presented evidence that the Debtor routinely allowed his tenant to pay less than the agreed upon monthly rent, and that the Debtor and tenant were friends. Both of these facts reflect the tenant's bias in favor of the Debtor, and cast doubt on veracity of the tenant's testimony.

In contrast, the Court found Ponomareva's testimony to be credible. Her testimony did not help the Debtor's case, however. Ponomareva testified that she and the children had been living in Costa Rica continuously since moving there in June 2013. When asked about whether she intended to remain in Costa Rica or return to New Hampshire, she said that she left such decisions up to the Debtor. In her closing brief, Ponomareva argued that if the Court finds that the Debtor abandoned his homestead interest in the Property, it could still find that she retained her separate homestead interest. It is not necessary to reach the issue of separate homestead rights, however, because the facts show that the Debtor and Ponomareva made a joint decision to abandon their homestead interest in the Property.

13

## IV. CONCLUSION

For all of the foregoing reasons, the Court finds that the Debtor and Ponomareva are not entitled to a homestead exemption in the Property under New Hampshire law, and will sustain the Objection by separate order.   This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.

Date:   December 24, 2015                    /s/ Bruce A. Harwood
                                                           Bruce A. Harwood
                                                           Chief Bankruptcy Judge